Green, J.
delivered the opinion of the court.
It is unnecessary to discuss the merits of the original bill in this case, because, after the most mature deliberation, the court is constrained to dismiss the cause on account of the champertous contract between the complainant Weedon and Colville, his agent for prosecuting the suit.
Where a right to recover is clearly established on the part of a complainant, as a majority of the court think, is done in this case, we cannot but feel great reluctance to dismiss the suit and thereby cut off the means of recovery altogether, because of an act, not in itself immoral, but contrary to public policy, and therefore illegal. But however reluctant we niay feel, when a case embraced by the act of assembly is clearly made out, we have no alternative, but to pronounce the law.
The proof places the existence of a contract by which Colville was to have for his services a share of the negroes, in case Weedon recovered them, beyond doubt. John Pen-dleton says, Weedon told him that “Mr. Colville was to attend to it, and if he gained the suit, he was to give him half.” Arthur Warren told him, “that he had agreed to give Mr. Colville half what they could obtain.” H. D. McBroom states, that in a company of several persons, Weedon mentioned the suit, but witness does not remember his words; *297 but Esquire Taylor told him, that he talked too much — you will injure yourself, somebody will take the advantage of you by talking as you do. Mr. Weedon then said, that he had not said any thing amiss. Esquire Taylor said, you have said enough now for your suit to be thrown out of court, if the opposite party knew it. Mr. Weedon said, he had a right to employ any body be pleased to do the business for him, as he was not able to do it himself. Mr. Weedon further said, there was, not the scratch of a pen between him and Colville, but he, Mr. Colville, should be well paid for his services, and if there was any contract, let them prove it.
The statement of the two first witnesses is direct and positive, and admits of no explanation, but if it needed confirmation, the evidence of McBroom is strongly corroborative of their statement. Weedon had said so much about the contract between himself and Colville, that Esquire Taylor reproved him, and told him, he had said enough to throw his suit out of court. Weedon does not, even when thus warned, pretend to deny, that there was a contract for Colville’s services, but said, he had a right to employ whom he pleased to do his business; that there was not the scratch of a pen between them, and if there was a contract let them prove it. Now if there had been no contract, he would at once have denied the existence of any, and would not have evaded the matter, by saying, there was not the “scratch of a pen, and if there was a contract, let them prove it.” It is clear, therefore, that there was a contract other than the mortgage, by which Colville was to give his personal attention to the prosecution of the suit, and in case of success, was to re-cieve a part of the thing in litigation.
2. The next question is, whether feuch contract is cham-perty, by the act of 1821, c 66, and is of the character, upon proof of the existence of which, the court is required to dismiss the suit?
It is contended by the defendant that the act of assembly only applies to attorney’s at law, and that, as Colville is no % an attorney at law, he is not to be affected by it. The-se-^ cond section of the act provides, that “it shall not be unlawful,' *298 for any party plaintiff, or intending to be a plaintiff to any suit at law or equity to promise or agree to give any greater or less portion of the thing,in litigation, upon any contingency, or upon the’event of the suit; and if any practicing attorney, or other person, with the exception contained in the ancient law, shall hereafter enter into any understanding, promise or agreement with any person who may have already brought suit in any of the courts of this state, or who may hereafter bring suit, or be about to bring suit in any of the courts hold-en in this state, such contract is declared to be void and of no effect. And upon the fact of champerty, or other unlawful contracts being satisfactorily disclosed to the court, where such suit may be depending, in either of the ways hereinafter mentioned, the suit shall be by the court dismissed; and the attorney or attorneys so entering, after the passage of this act, into such understanding or agreement, shall be by the court stricken from the list of attorneys, and shall be disqualified to practice in any of the courts of this state for the term of five years.”
The act then goes on to provide, that a bill for discovery and relief may be filed against the party claiming title, and Iris attorney; or, that the defendant may exhibit interrogatories to the plaintiff, his agent or attorney, for the discovery ..of the matters that are made unlawful by the act.
'That this act applies to other persons as well as attorneys, 'is so manifest, that it does not admit of a doubt. In the first part of the second section above quoted, it provides, that if any practising attorney, or other person, shall make the contract prohibited in the act, the contract shall be void; and upon the fact appearing in either of the ways thereinafter ¡mentioned, the suit shall be dismissed.
Now, although in the subsequent part of the section in-which the character of the proceedings to be adopted is-pointed out, the words, “other person,” are not used, still,, as it has been declared, that if such person should make the contract prohibited by the act, the suit should be dismissed, the obligation to dismiss it is imperative upon the courts. The method thereafter pointed out applies to such “other persons” as well as to attorneys.
*299 Bat to put the matter beyond doubt, it is provided in this same section, that the interrogatories may be exhibited “to the plaintiff or plaintiffs, their agent or attorneys.” .So in the fourth section it is provided, that the interrogatories shall be answered by the “plaintiff or plaintiffs, or their agents,” leaving out attorneys. It plainly appears, therefore, that the omission to mention “other persons,” at some of the places where the word attorney is used, was the result of mere negligence in the draftsman of the act, and not with design to confine its operations to attorneys. A majority of the court therefore think, that it is imperatively the duty of the court to dismiss the complainant’s bill.
Let the decree be reversed and the bill dismissed.